44 A.3d 344

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Barry S. BROWN.**

**Misc. Docket AG No. 1, Sept. Term, 2011.**

Court of Appeals of Maryland.

April 23, 2012.

Reconsideration Denied June 21, 2012.

302

304

Marianne J. Lee, Assistant Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for Petitioner.

Barry S. Brown, Esquire, Baltimore, Maryland, for Respondent.

Argued before: BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

HARRELL, J.

The Attorney Grievance Commission, acting through Bar Counsel (Petitioner), filed a petition for disciplinary or remedial action, pursuant to Maryland Rule 16–751(a)(1),[1] against Barry S. Brown, Esquire (hereinafter, Respondent or Brown). Petitioner charged that Respondent's conduct, arising from his defective representation of four separate clients, violated the

---

1. Maryland Rule 16–751(a)(1) provides: "Commencement of disciplinary or remedial action. (1) Upon approval or direction of Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

following Maryland Lawyers' Rules of Professional Conduct (MLRPC): 1.1 ("Competence") [2]; 1.2(a) ("Scope of Representation and Allocation of Authority Between Client and Lawyer") [3]; 1.3 ("Diligence") [4]; 1.4(a) and (b) ("Communication") [5]; 1.6(a) ("Confidentiality of Information") [6]; 1.16(d) ("Declining or Terminating Representation") [7]; 3.2 ("Expediting Litiga-

---

**2.** Maryland Lawyers' Rule of Professional Conduct (MLRPC) 1.1 provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

**3.** MLRPC 1.2(a) provides, in relevant part:

[A] lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter.

**4.** MLRPC 1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

**5.** MLRPC 1.4(a) and (b) provide:

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;

(2) keep the client reasonably informed about the status of the matter;

(3) promptly comply with reasonable requests for information; and

(4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

**6.** MLRPC 1.6(a) provides: "A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by paragraph (b)."

**7.** MLRPC 1.16(d) provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the

tion")[8]; 8.1(a) and (b) ("Admission and Disciplinary Matters")[9]; and, 8.4(c) and (d) ("Misconduct").[10] Pursuant to Maryland Rules 16–752(a)[11] and 16–757(c),[12] we designated the Honorable Patrick Cavanaugh of the Circuit Court for Baltimore County to conduct a hearing and file written findings of fact and conclusions of law.

---

client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

**8.** MLRPC 3.2 provides: "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

**9.** MLRPC 8.1(a) and (b) provide:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact; or

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

**10.** MLRPC 8.4 provides, in relevant part: "It is professional misconduct for a lawyer to: . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation [and] (d) engage in conduct that is prejudicial to the administration of justice. . . ."

**11.** Maryland Rule 16–752(a) provides:

Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing.

**12.** Maryland Rule 16–757(c) provides:

Findings and conclusions. The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party.

Judge Cavanaugh conducted the hearing on 26–29 September 2011. He concluded, by clear and convincing evidence, that Respondent violated each MLRPC charged by Petitioner, except MLRPC 1.6(a) and MLRPC 8.1(a). Petitioner did not file with this Court any exceptions to Judge Cavanaugh's written findings of fact and conclusions of law, recommending that we disbar Respondent. Although Respondent failed to file with us either exceptions or a recommendation for appropriate sanction, he filed a post-hearing motion with Judge Cavanaugh and also with this Court. For reasons to be explained *infra*, these motions were either untimely or filed in the wrong venue. Therefore, we shall not treat either of Respondent's motions as exceptions, pursuant to Maryland Rule 16–758(b) and (c).[13]

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Complaint of William Wallace/Action Business Systems, Inc.

In 2003, Respondent filed in the Circuit Court for Baltimore County a lawsuit on behalf of Action Business Systems, Inc. (ABS). The defendant removed the action to the United States District Court for the District of Maryland. In the federal court, the defendant filed a third-party complaint against William Wallace, president and primary shareholder of ABS. On 26 April 2005, the defendant served upon Respondent interrogatories, a request for production of documents, and a notice of deposition of Wallace. Respondent failed to respond to the defendant's discovery requests. As a result, on 18 October 2005, the federal court issued a memorandum opinion and order, granting the defendant's motion for sanc-

---

**13.** Maryland Rule 16–758(b) and (c) provides:

(b) Exceptions; recommendations. Within 15 days after service of the notice required by section (a) of this Rule, each party may file (1) exceptions to the findings and conclusions of the hearing judge and (2) recommendations concerning the appropriate disposition under Rule 16–759(c).

(c) Response. Within 15 days after service of exceptions or recommendations, the adverse party may file a response.

tions and entering a default judgment against ABS on each of the defendant's claims.

Respondent filed a motion to reconsider the discovery sanctions. In his motion, Brown admitted to his failure to respond to the defendant's discovery requests, blaming "a series of physical illnesses and non-physical setbacks" that caused him to "miss large amounts of time from [his] office." The court denied his motion because it was filed untimely. As the case unraveled, Respondent failed to advise Wallace about the status of the matter. Wallace learned for the first time of Respondent's neglect in January 2006, when the federal court entered an order of judgment, in excess of one million dollars, against Wallace and ABS.

In addition to offering up physical illness as an excuse for his dilatory conduct in the Wallace/ABS matter, Respondent explained to Judge Cavanaugh that the "deaths of people close to [him]" impaired his representation. Respondent did not substantiate or provide corroborating evidence of these claimed deaths or setbacks, explaining merely during oral argument before this Court that he "lost five people close to [him] within about a seven-month period." [14]

On 18 October 2005, Judge Nickerson, who presided over the ABS/Wallace case in the federal court, alerted Petitioner to Respondent's problematic representation of Wallace and ABS. As a result of this complaint, Petitioner and Respondent entered into a conditional diversion agreement, pursuant to Maryland Rule 16–736(a). [15] In the agreement, Respondent

---

**14.** Due to Respondent's failure to respond timely to Petitioner's prehearing discovery requests in this disciplinary proceeding, Judge Cavanaugh granted Petitioner's motion for sanctions against Respondent. The sanction prevented Respondent from calling witnesses (other than himself) and producing evidence in defense of the charges. Respondent was permitted, however, to produce evidence in mitigation of any potential sanction.

**15.** Maryland Rule 16–736(a) provides:

When appropriate. Upon completing an investigation, Bar Counsel may agree to a Conditional Diversion Agreement if Bar Counsel concludes that:

admitted to professional misconduct during his representation of Wallace/ABS.

On 28 April 2008, Petitioner received a letter from U.S. Magistrate Judge Susan K. Gauvey reproaching Respondent's conduct in a different matter. Petitioner and Respondent entered temporarily another conditional diversion agreement. Shortly thereafter, a number of Respondent's former clients contacted Petitioner with additional, separate complaints about Respondent (discussed *infra*). Respondent failed to respond to Petitioner's requests for information about his representation of those clients. As a result, Petitioner revoked the conditional diversion agreements.[16]

Judge Cavanaugh rendered the following conclusions of law regarding Respondent's representation of Wallace/ABS. Re-

---

(1) the attorney committed professional misconduct or is incapacitated;

(2) the professional misconduct or incapacity was not the result of any wilful or dishonest conduct and did not involve conduct that could be the basis for an immediate Petition for Disciplinary or Remedial Action pursuant to Rules 16–771, 16–773, or 16–774;

(3) the cause or basis of the professional misconduct or incapacity is subject to remediation or resolution through alternative programs or mechanisms, including (A) medical, psychological, or other professional treatment, counseling, or assistance, (B) appropriate educational courses or programs, (C) mentoring or monitoring services, or (D) dispute resolution programs; and

(4) the public interest and the welfare of the attorney's clients and prospective clients will not be harmed if, instead of the matter proceeding immediately with a disciplinary or remedial proceeding, the attorney agrees to and complies with specific measures that, if pursued, will remedy the immediate problem and likely prevent any recurrence of it.

16. Rule 16–736(h) provides how a revoked confidential diversion agreement is treated in subsequent disciplinary proceedings:

(2) Except as provided in subsections (h)(4) and (h)(5) of this Rule, the contents of the Agreement are confidential and may not be disclosed.

(4) Upon revocation of an Agreement pursuant to section (f) of this Rule, the contents of the Agreement lose their confidentiality and may be disclosed in any ensuing disciplinary or remedial proceeding.

(5) The contents of an Agreement may be disclosed in a subsequent proceeding against the attorney when relevant to a subsequent complaint based on similar misconduct.

spondent failed to act with reasonable diligence and promptness in providing legal services, violating MLRPC 1.3. Respondent failed to keep Wallace apprised sufficiently of the status of his case, violating MLRPC 1.4(a) and (b). Respondent failed to make reasonable efforts to expedite litigation, consistent with the interests of Wallace/ABS, which violated MLRPC 3.2. Respondent failed to respond to inquiries from Petitioner for information about his representation of Wallace/ABS, violating MLRPC 8.1(b). Finally, the totality of Respondent's conduct amounted to conduct prejudicial to the administration of justice, within the meaning of MLRPC 8.4(d).

### B. Complaint of Raymond J. Sweitzer

On 26 March 2000, Raymond J. Sweitzer suffered injuries in an automobile accident. He engaged Respondent to pursue a personal injury claim. Approximately three years later, Respondent asserted that claim in a lawsuit filed in the District Court of Maryland, sitting in Anne Arundel County. Respondent did not prosecute the case, however. He failed to serve any discovery requests upon the defendant and failed to respond timely to the defendant's discovery requests. Because of Respondent's lack of response, the defendant moved for, and the trial court granted, sanctions against Sweitzer. Respondent did not inform Sweitzer of the defendant's discovery requests, Respondent's failure to respond to them, or the sanctions.

Sweitzer was involved in a second, more serious accident on 25 January 2005. He engaged Respondent again to represent him. Respondent still had not informed Sweitzer about the discovery failure and sanctions in the earlier case. Instead, Respondent advised Sweitzer to dismiss voluntarily the prior case for pretextual reasons. Sweitzer agreed, and Respondent dismissed the case on 21 June 2005.

On 3 October 2007, Respondent filed a complaint regarding the second accident. Sweitzer struggled repeatedly to reach Respondent to learn about the progress of the second lawsuit. Respondent failed to return most of Sweitzer's telephone calls

and cancelled scheduled meetings with Sweitzer. Frustrated, Sweitzer consulted with another attorney and terminated Respondent's engagement. Sweitzer re-engaged Respondent, however, after Respondent agreed to communicate more regularly with him. Ultimately, Sweitzer terminated Respondent's engagement when communication did not improve. He requested repeatedly that Respondent send to him a copy of his file, but Respondent failed to do so.

Judge Cavanaugh offered the following conclusions of law regarding Respondent's representation of Sweitzer. Respondent failed to communicate and consult with Sweitzer about the objectives of Sweitzer's second case, violating MLRPC 1.2(a) and MLRPC 1.4(a). Respondent failed to represent Sweitzer with reasonable diligence and promptness in both cases, which violated MLRPC 1.3. Respondent failed to supply to Sweitzer a copy of his case file(s), violating MLRPC 1.16(d). Finally, the totality of Respondent's conduct amounted to conduct prejudicial to the administration of justice, within the meaning of MLRPC 8.4(d).

### C. Complaint of Linda Cartzendafner

In May 2002, Linda Cartzendafner engaged Respondent to pursue a medical malpractice claim arising from the death of her husband. Cartzendafner gave to Respondent all of the medical documents in her possession relating to her husband's death. On 9 May 2003, Brown filed a complaint with the Health Claims Arbitration Office (HCAO). He amended the complaint twice to add additional parties. On 5 November 2003, Respondent filed a Certificate of Merit with the HCAO. Based on Respondent's failure to move along the complaint for nearly three years thereafter, the HCAO issued a notice of contemplated dismissal of Cartzendafner's claim. Brown failed to respond to the notice. The HCAO dismissed Cartzendafner's claim on 20 June 2006.

Cartzendafner and Respondent had little-to-no contact thereafter, until a meeting that occurred approximately two years after the dismissal of the complaint. At that meeting, Respondent misrepresented to Cartzendafner that her claim

was pending in arbitration. Although Respondent told Cartzendafner that the expert witness withdrew his certificate of merit for the malpractice claim, he did not tell her that the HCAO dismissed the case.

Thereafter, Respondent stopped communicating entirely with Cartzendafner, despite her continued requests for information. Frustrated, Cartzendafner retained new counsel in January 2009. She learned for the first time from her new attorney that the HCAO dismissed her claim due to a lack of prosecution. She learned also from the attorney that the statute of limitations had expired on the claim. Cartzendafner sent Respondent a letter terminating his representation and requesting a copy of her file. Respondent failed to respond to the letter.

Judge Cavanaugh made the following conclusions of law regarding Brown's representation of Cartzendafner. Respondent failed to consult with Cartzendafner about the means of achieving her objectives, violating MLRPC 1.2(a). Respondent failed to represent Cartzendafner with reasonable diligence and promptness, thus violating MLRPC 1.3. Cartzendafner requested a copy of her case file at the end of the representation, but Respondent failed to produce it, violating MLRPC 1.16(d). Respondent misrepresented to Cartzendafner that her claim was pending in arbitration, violating MLRPC 8.4(c). Finally, the totality of Brown's conduct amounted to conduct prejudicial to the administration of justice, within the meaning of MLRPC 8.4(d).

### D. Complaint of Gustave Mark Phoebus

In May 2004, Gustave Mark Phoebus engaged Respondent, on a contingency-fee basis, to prosecute a medical malpractice claim. Respondent filed two complaints with the HCAO, one on 3 May 2004 against Friends Medical Center, Inc. (FMC) and the other on 13 December 2004 against the University of Maryland Medical Systems (UMMS).

In December 2005, the HCAO dismissed for lack of prosecution the claim against FMC. During a meeting between the

two in 2006, Respondent failed to inform Phoebus of the dismissal. Instead, he advised Phoebus to dismiss voluntarily the claim because the expert witness withdrew his certification of merit for the claim. Phoebus agreed to dismiss the complaint against FMC.

On 16 October 2006, the HCAO dismissed Phoebus's remaining claim against UMMS due to lack of prosecution. Respondent revived the claim by filing a motion to defer entry; however, the HCAO dismissed the case again on 27 November 2007 for lack of prosecution because no further progress was made. Respondent failed to inform Phoebus that the HCAO dismissed his claim against UMMS. The statute of limitations on both claims expired prior to being dismissed by the HCAO.

On 22 September 2009, Phoebus submitted to Respondent a written list of questions concerning his medical malpractice claims and asked to be provided with copies of the complaints filed with the HCAO. Brown failed to respond, prompting Phoebus to terminate him in January 2010 and to request a copy of the case file(s) from Respondent. Respondent failed to send Phoebus a copy of the file(s). Additionally, Brown failed to respond to Petitioner's request for information about his representation of Phoebus.

Judge Cavanaugh made the following conclusions of law regarding Respondent's representation of Phoebus. Respondent failed to represent his client with reasonable competency, diligence, and promptness, which violated MLRPC 1.1 and MLRPC 1.3. Respondent's advice to dismiss voluntarily the claim against FMC, after the HCAO dismissed already the claim for lack of prosecution, violated MLRPC 1.2(a), MLRPC 1.4(a), and MLRPC 1.4(b). Respondent's failure to honor Phoebus's request for a copy of his case file(s) at the end of the representation violated MLRPC 1.16(d). Respondent failed to respond to Petitioner's demands for information, violating MLRPC 8.1(b). Respondent misrepresented to Phoebus that his claim was pending before the HCAO, which violated MLRPC 8.4(c). Finally, the totality of Respondent's

conduct amounted to conduct prejudicial to the administration of justice, within the meaning of MLRPC 8.4(d).

## II. STANDARD OF REVIEW

 The standard of review for attorney disciplinary proceedings is well established and may be re-stated succinctly for present purposes:

This Court has original and complete jurisdiction over attorney discipline proceedings in Maryland. In our independent review of the record, we accept the hearing judge's findings of fact as prima facie correct unless shown to be clearly erroneous. If no exceptions are filed, we may treat the hearing judge's findings of fact as established for the purpose of determining the appropriate sanction. We review the hearing judge's conclusions of law [without deference].

*Atty. Griev. Comm'n v. Stern,* 419 Md. 525, 556–57, 19 A.3d 904, 925 (2011) (internal citations omitted).

## III. ANALYSIS

Neither party filed exceptions to the hearing judge's findings of fact and conclusions of law. Whether certain motions filed by Respondent in the Circuit Court and with us should be construed as the equivalent of exceptions requires some comment. Brown filed a motion with the Circuit Court, titled "Respondent's Motion for New Trial," and a motion with this Court, titled "Respondent's Motion to Dismiss or, in the Alternative, to Remand." Neither of these motions were appropriate or filed properly. As elaborated *infra,* we shall not recognize either as exceptions within the meaning of Maryland Rule 16–758(b) and (c).

 Having original and complete jurisdiction over attorney discipline proceedings in Maryland, this Court is the sole body with authority to grant a remand or a new hearing. Such requests are included ordinarily in exceptions filed with the Court. *See Atty. Griev. Comm'n v. James,* 385 Md. 637, 646, 870 A.2d 229, 234 (2005) (addressing Respondent's motion

to remand that was included in Respondent's exceptions); *Atty. Griev. Comm'n v. Muhammad,* 395 Md. 676, 690 n. 13, 912 A.2d 588, 596 n. 13 (2006) (denying an attorney's motion to remand in a post-hearing memorandum because attorney " 'had ample notice of the fact that the Findings of Fact and Conclusions of Law were filed and many opportunities to review same' " (quoting Bar Counsel's oppositional motion)); *Atty. Griev. Comm'n v. Blum,* 373 Md. 275, 293–94, 818 A.2d 219, 230–31 (2003) (addressing Respondent's motion for new hearing that was included in Respondent's exceptions). Respondent filed his "Motion for New Trial" in the Circuit Court on either 1 December 2011 or 5 December 2011.[17,18] Regardless of when Respondent filed the motion, this Court alone has the authority to order a remand or a new hearing, not the hearing judge. Therefore, Respondent's "Motion for New Trial" was filed with and directed to Judge Cavanaugh improperly.[19]

---

17. When we asked Respondent at oral argument why he waited so long after the conclusion of Judge Cavanaugh's hearing to file this motion, he explained that a fire at his office in early November 2011 destroyed his files. Respondent failed to substantiate this claim, however, as he could not point to having advised previously the hearing judge, Petitioner, or this Court about the fire. Nor did Respondent request an extension of time to file anything for any reason. We are disinclined to consider this alleged event under these circumstances.

18. Ordinarily, Rule 16–757(e), which requires the Clerk of the Circuit Court to "transmit the record to the Court of Appeals within 15 days after the statement of findings and conclusions is filed," would have divested Judge Cavanaugh (or the Clerk of the Circuit Court) of authority to accept the motion because Judge Cavanaugh filed his written findings and conclusions on 1 November 2011; however, we granted, upon motion by Petitioner, an extension of time for the Clerk to transmit the record to us. The record was filed with this Court on or about 8 December 2011.

19. Even if Respondent's "Motion for New Trial" was cognizable as "exceptions" to Judge Cavanaugh's findings and conclusions, the claims contained in the motion would be overruled. Brown took umbrage at the weight given by Judge Cavanaugh to the testimony of various witnesses and the inclusion/exclusion of their testimony. Such "exceptions" are without merit. "[T]he hearing judge 'may elect to pick and choose which evidence to rely upon' because he or she 'is in the best position to assess first hand a witness's credibility.' " *Atty.*

 Regarding the "Motion to Dismiss" filed in this Court, Respondent filed it untimely. Rule 16–758(b) and (c) provide:

(b) Exceptions; recommendations. Within 15 days after service of the notice required by section (a) of this Rule [which is irrelevant within the context of this analysis], each party may file (1) exceptions to the findings and conclusions of the hearing judge and (2) recommendations concerning the appropriate disposition under Rule 16–759(c).

(c) Response. Within 15 days after service of exceptions or recommendations, the adverse party may file a response.

Petitioner filed its recommendations for sanction on 22 December 2011. Pursuant to Rule 1–203(a),[20] the last day that

---

*Griev. Comm'n v. Payer*, 425 Md. 78, 93, 38 A.3d 378, 387 (2012) (quoting, among other cases, *Atty. Griev. Comm'n v. Harris*, 366 Md. 376, 388–89, 784 A.2d 516, 523 (2001)). Nor do Respondent's arguments in the motion show that the hearing judge's evidentiary findings were clearly erroneous.

Respondent complained also that Judge Cavanaugh should have recused himself from participation in the proceedings. "[T]he issue of recusal in attorney discipline matters is within the province of the Court of Appeals," not within the province of the hearing judge. *Atty. Griev. Comm'n v. Shaw*, 363 Md. 1, 10–11, 766 A.2d 1028, 1033 (2001) (citing *Atty. Griev. Comm'n v. Hollis*, 347 Md. 547, 559, 702 A.2d 223, 229 (1997)). Moreover, hearing judges are presumed to be impartial, and "[t]he party requesting recusal has a heavy burden to ... prove that the judge has a personal bias or prejudice against him or her or has personal knowledge of disputed evidentiary facts." *Shaw*, 363 Md. at 11, 766 A.2d at 1033. Respondent's cursory argument that the hearing judge made "an abundance of negative comments" failed utterly to overcome the presumption of impartiality, had we considered that argument to be an exception.

Finally, Respondent remonstrated about Judge Cavanaugh's "prohibition against Respondent [from] calling any witnesses or producing any documents." Respondent's failure to respond to Petitioner's discovery requests by the discovery deadline, despite being granted an extension of his time to do so, justified fully Judge Cavanaugh's imposition of this sanction for his discovery violation.

20. Maryland Rule 1–203(a) ("Time") provides:

(a) Computation of time after an act, event, or default. In computing any period of time prescribed by these rules, by rule or order of court, or by any applicable statute, the day of the act, event, or default after which the designated period of time begins to run is not

Respondent could file timely exceptions was 6 January 2012. Respondent filed his "Motion to Dismiss" on 6 February 2012. Therefore, we shall not consider Respondent's motion to dismiss for what it purports to be or as exceptions.[21]

When an attorney who is the subject of a disciplinary proceeding is given due notice and the opportunity to defend in a fair hearing, the attorney "has exhausted his entitlement to further judicial proceedings." *Atty. Griev. Comm'n v. McLaughlin,* 372 Md. 467, 494, 813 A.2d 1145, 1161 (2002) (citing *Atty. Griev. Comm'n v. Harris,* 366 Md. 376, 391, 784 A.2d 516, 525 (2001)). Respondent failed to provide us with a scintilla of evidence suggesting an unfair hearing.

In the absence of exceptions to the hearing judge's findings of fact, we shall accept them as established. *See, e.g., Atty. Griev. Comm'n v. Brady,* 422 Md. 441, 458, 30 A.3d 902, 911 (2011). Therefore, we shall review, without deference, his conclusions of law, and, if we agree with them, determine the

---

included. If the period of time allowed is more than seven days, intermediate Saturdays, Sundays, and holidays are counted; but if the period of time allowed is seven days or less, intermediate Saturdays, Sundays, and holidays are not counted. The last day of the period so computed is included unless:

(1) it is a Saturday, Sunday, or holiday, in which event the period runs until the end of the next day that is not a Saturday, Sunday, or holiday; or

(2) the act to be done is the filing of a paper in court and the office of the clerk of that court on the last day of the period is not open, or is closed for a part of the day, in which event the period runs until the end of the next day that is not a Saturday, Sunday, holiday, or a day on which the office is not open during its regular hours.

21. Even if this Court were to accept Respondent's motion to dismiss as exceptions, we would overrule the claims. Respondent argues that Rule 16–757, which states that the disciplinary hearing before Judge Cavanaugh was governed by the "procedure applicable to a court trial in a civil action tried in a circuit court," entitles him to a seek a new trial, pursuant to Rule 2–535. This argument fails because Rule 16–758 governs specifically post-hearing procedure in attorney disciplinary cases, overriding the general provision in Rule 16–757. *See, e.g., A.S. Abell Pub. Co. v. Mezzanote,* 297 Md. 26, 40, 464 A.2d 1068, 1075 (1983) ("Ordinarily, a specific enactment prevails over an incompatible general enactment in the same or another statute.").

appropriate sanction. Md. Rule 16–759(b).[22]

### A. MLRPC 1.1: Competence

Generally, this Court will find a violation of MLRPC 1.1 if an attorney fails to act or acts in an untimely manner, resulting in harm to his or her client. For instance, in *Attorney Grievance Commission v. Bleecker,* we concluded that an attorney violated MLRPC 1.1 by filing a suit after the applicable statute of limitations expired. 414 Md. 147, 171–72, 994 A.2d 928, 942–43 (2010). In *Attorney Grievance Commission v. Kwarteng,* an attorney's failure to prepare interrogatories directed to the other side, to respond to the other side's interrogatories, and to preserve a client's right to appeal violated MLRPC 1.1. 411 Md. 652, 658, 984 A.2d 865, 868 (2009).

█ Respondent's failure to pursue Phoebus's and Cartzendafner's claims in a timely manner caused the statute of limitations for their claims to expire by the time the HCAO dismissed their claims. Their claims were dismissed because Respondent failed to prosecute them. Further, Brown failed to answer discovery requests in the cases of Sweitzer and Wallace/ABS. Respondent's dilatory representation stripped Cartzendafner and Phoebus of their opportunity to pursue their claims and prejudiced Wallace/ABS and Sweitzer by precipitating discovery sanctions against them. Respondent's conduct violated MLRPC 1.1.

### B. MLRPC 1.2(a): Scope of Representation and Allocation of Authority Between Client and Lawyer

█ In *Attorney Grievance Commission v. Reinhardt,* the errant attorney ignored client requests for updates about the

---

22. Maryland Rule 16–759(b) provides, in relevant part:

> (1) Conclusions of law. The Court of Appeals shall review de novo the circuit court judge's conclusions of law.
> (2) Findings of fact. (A) If no exceptions are filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.

client's case or for a copy of their case files, and failed to prosecute a client's case after filing a complaint. 391 Md. 209, 218, 892 A.2d 533, 538 (2008). We concluded that this violated MLRPC 1.2(a). *Reinhardt*, 391 Md. at 218, 892 A.2d at 538; *see also Atty. Griev. Comm'n v. Angst*, 369 Md. 404, 409–10, 800 A.2d 747, 750–51 (2002) (concluding that an attorney's failure to file a quit claim deed and return client telephone calls amounted to a violation of MLRPC 1.2(a)). Brown's conduct here mirrors closely the misconduct in *Reinhardt.* Cartzendafner's and Phoebus's cases were dismissed for lack of prosecution due to Respondent's inaction. Respondent failed subsequently to inform either client of the dismissals and ignored the clients' repeated requests for information. Respondent failed similarly in Sweitzer's case to pursue the claim or to inform Sweitzer about the imposition of discovery sanctions imposed due to Respondent's inaction. Respondent's conduct violated MLRPC 1.2(a).

### C. MLRPC 1.3: Diligence

Brown's conduct violated MLRPC 1.3 in three ways. First, a lawyer who causes discovery sanctions to be imposed against his/her client due to his/her failure to answer discovery requests violates MLRPC 1.3, even if the sanction is lifted later. *Atty. Griev. Comm'n v. Culver*, 381 Md. 241, 276, 849 A.2d 423, 444 (2004); *see also Atty. Griev. Comm'n v. Gisriel*, 409 Md. 331, 370–71, 974 A.2d 331, 354 (2009) (stating that a lawyer's failure to respond to motions amounted to violation of MLRPC 1.3). In the cases of Wallace/ABS and Sweitzer, Brown's lack of diligence and promptness in answering the opposing parties' discovery requests caused the judge in each case to issue sanctions against Brown's clients.

Second, an attorney violates MLRPC 1.3 when he/she fails to pursue his/her client's case by not prosecuting the claim after filing the complaint. In *Attorney Grievance Commission v. McCulloch,* an attorney filed a complaint, but failed to secure service of process on the defendant or to respond to a notice from the court of contemplated dismissal for failure to prosecute the case. 404 Md. 388, 398, 946 A.2d 1009, 1015

(2008). We concluded that the attorney violated MLRPC 1.3. *McCulloch*, 404 Md. at 398, 946 A.2d at 1015; *see also Atty. Griev. Comm'n v. Patterson*, 421 Md. 708, 737, 28 A.3d 1196, 1213 (2011) (stating that lawyer's failure to pursue a claim after filing a complaint demonstrated "incompetence and insufficient diligence in the matter," a violation of MLRPC 1.3). In the cases of Cartzendafner and Phoebus, the HCAO dismissed both cases due to lack of prosecution and Respondent's failure to respond to motions to dismiss, despite the clients' expectations that Respondent would pursue their claims.

■ Finally, a lawyer may violate MLRPC 1.3 if the lawyer fails to protect against expiration of the statute of limitations regarding his/her client's claim. *See Bleecker*, 414 Md. at 170–71, 994 A.2d at 942. Here, the HCAO dismissed Phoebus's and Cartzendafner's claims due to Respondent's laggard representation. Prior to dismissal, the applicable statute of limitations expired on those claims. The clients were left without recourse after the HCAO dismissed the claims. Brown was aware expressly of the impending statute of limitations deadlines in both cases, heightening his culpability. ("When [Phoebus] came to me there was not all that much time left before we needed to file to protect the statute of limitations," and "I would have to drop everything I was doing because the limitations [in Cartzendafner's case] was coming up to file suit. . . .")

For these reasons, Respondent violated MLRPC 1.3.

### D. MLRPC 1.4(a) and (b): Communication

■ Respondent violated MLRPC 1.4(a) during his representation of Wallace/ABS, Sweitzer, and Phoebus. In *McCulloch*, we concluded that an attorney violated this rule when she failed to communicate with her client, including not advising her client about the status of efforts to serve the defendant and to respond to the opponent's motion to dismiss. 404 Md. at 398, 946 A.2d at 1015. Respondent failed similarly to keep his clients informed. He failed to tell Wallace/ABS and Sweitzer about the discovery sanctions against them, failed to

notify Phoebus that his claims had been dismissed for lack of prosecution, and failed to respond to Sweitzer's and Phoebus's numerous case-status requests. Respondent's conduct violated MLRPC 1.4(a).

We agree with Judge Cavanaugh that Respondent violated also MLRPC 1.4(b) during his representation of Wallace/ABS and Phoebus. A lawyer's failure to inform his or her clients about a pending or granted motion to dismiss violates MLRPC 1.4(b). *Atty. Griev. Comm'n v. Hodgson*, 396 Md. 1, 6, 912 A.2d 640, 643–44 (2006); *Atty. Griev. Comm'n v. Harris*, 371 Md. 510, 522, 810 A.2d 457, 464 (2002). Here, Respondent did not advise Phoebus about the notice of contemplated dismissal issued in his claim. Similarly, he did not advise Wallace/ABS of the discovery sanctions and motion for default judgment against him. Brown's failure to discuss with his clients the negative developments in their respective cases prevented them from making informed decisions about their cases.

### E. MLRPC 1.16(d): Declining or Terminating Representation

When a client requests his or her file from an attorney at the end of the representation, MLRPC 1.16(d) requires the attorney to surrender the portions of the file (or a copy) to which the client is entitled (assuming no proper charging lien exists). *Atty. Griev. Comm'n v. Edib*, 415 Md. 696, 715–17, 4 A.3d 957, 969–70 (2010); *Atty. Griev. Comm'n v. De La Paz*, 418 Md. 534, 554, 16 A.3d 181, 193–94 (2011) (citing *McCulloch*, 404 Md. at 399, 946 A.2d at 1016). Here, Sweitzer, Cartzendafner, and Phoebus requested their case files after ending their engagements with Respondent. He failed to comply with their requests, thereby violating MLRPC 1.16(d).

### F. MLRPC 3.2: Expediting Litigation

We opined that an attorney who fails to comply with discovery requests, and attempts to mitigate his or her short-

comings with "cryptic excuses," violates MLRPC 3.2. *Atty. Griev. Comm'n v. Steinberg,* 395 Md. 337, 366, 910 A.2d 429, 446 (2006) (stating that an attorney who canceled two deposition dates, because of a "sick relative who required medical attention," violated MLRPC 3.2). Here, Judge Cavanaugh found, by clear and convincing evidence, that Brown failed to respond to various discovery requests in the Wallace/ABS litigation. Respondent offered two excuses for his neglect. He claimed to have endured a "a series of physical illnesses and non-physical setbacks [causing him] to miss large amounts of time from [his] office." Respondent stated also that he "was dealing with the deaths of people close to [him]" at the time of the relevant litigation. These unsupported excuses are as cryptic and unsubstantiated on this record as were the analogous assertions in *Steinberg.* Further, Respondent's failure to comply with the discovery requests caused the trial judge to issue sanctions and a default judgment against Wallace/ABS, which violated also MLRPC 3.2. *Atty. Griev. Comm'n v. West,* 378 Md. 395, 405–07, 836 A.2d 588, 594–95 (2003) (agreeing with the hearing judge that the attorney who failed to comply with discovery requests, resulting in a motion for default judgment, violated MLRPC 3.2).

### G. MLRPC 8.1(b): Admission and Disciplinary Matters

 Brown violated MLRPC 8.1(b). Under this rule, an attorney must answer timely requests from the Attorney Grievance Commission regarding a complaint in a potential disciplinary matter. *Bleecker,* 414 Md. at 173–74, 994 A.2d at 943–44 (citing, among other cases, *Atty. Griev. Comm'n v. Queen,* 407 Md. 556, 565–66, 967 A.2d 198, 203–04 (2009)). Here, Brown failed to reply to Petitioner's two letters, dated 19 March 2010 and 2 April 2010, which requested information about Respondent's representation of Wallace/ABS and Phoebus.

### H. MLRPC 8.4(c) and (d): Misconduct

MLRPC 8.4(c) prohibits an attorney from, among other things, making misrepresentations to his or her client. *See,*

*e.g., Atty. Griev. Comm'n v. Maignan*, 423 Md. 191, 204, 31 A.3d 467, 474 (2011); *Atty. Griev. Comm'n v. Kreamer*, 404 Md. 282, 333–34, 946 A.2d 500, 530–31 (2008). Respondent misrepresented to Cartzendafner the status of her case. Judge Cavanaugh found, by clear and convincing evidence, that Brown advised her in 2008 that her case was still pending in arbitration before the HCAO. In fact, the HCAO dismissed her case two years prior for lack of prosecution. Therefore, Respondent made a direct misrepresentation to his client and violated MLRPC 8.4(c).

 This Court will find a MLRPC 8.4(c) violation also when an attorney conceals material information from his or her client, despite not misrepresenting explicitly the information. *Bleecker*, 414 Md. at 168–69, 994 A.2d at 940–41 (citing, among other cases, *Atty. Griev. Comm'n v. Harris*, 403 Md. 142, 163, 939 A.2d 732, 744 (2008)). In *Bleecker*, the attorney failed to disclose or explain to his client that her case had been dismissed with prejudice, thus violating MLRPC 8.4(c). 414 Md. at 169, 994 A.2d at 941. A third party informed the client about the dismissal and subsequent expiration of the statute of limitations. *Bleecker*, 414 Md. at 169, 994 A.2d at 941. Here, Brown concealed twice material information about Phoebus's claims. First, he advised Phoebus to dismiss one of his claims, which had been dismissed already for lack of prosecution. Second, Respondent failed to advise Phoebus that his second claim had been dismissed for lack of prosecution. As in *Bleecker*, Phoebus learned from a third party that his claims had been dismissed and were time-barred. Thus, Respondent misrepresented, by concealment, that Phoebus's claims were pending and active with the HCAO.

Regarding MLRPC 8.4(d), we have noted that:

[A Respondent's] failure to promptly, completely and truthfully respond to Bar Counsel's requests for information, to keep his client advised of the status of the representation and to diligently represent the complainant constitutes conduct which tends to bring the legal profession into

disrepute and is therefore prejudicial to the administration of justice.

*Atty. Griev. Comm'n v. Rose,* 391 Md. 101, 111, 892 A.2d 469, 475 (2006). As detailed *supra,* Respondent failed to respond to at least two information requests from Petitioner, neglected to keep his clients updated regarding the status of their claims, and failed to represent his clients with the diligence and promptness expected from Maryland attorneys. The totality of Respondent's conduct amounted to a violation of MLRPC 8.4(d).

## IV. SANCTION

As noted earlier, Petitioner recommends that Respondent be disbarred.

 *Attorney Grievance Commission v. Paul* explains the various purposes of attorney disciplinary proceedings:

It is well-settled that the purpose of disciplinary proceedings is to protect the public rather than to punish the erring attorney. In addition to being a prophylactic for the public, disciplinary proceedings are a catharsis for the profession, intended to ensure the integrity of the bar and to prevent the transgressions of an individual lawyer from bringing its image into disrepute. Therefore, the public interest is served when sanctions designed to effect general and specific deterrence are imposed on an attorney who violates the disciplinary rules, and those sanctions demonstrate to members of the legal profession the type of conduct that will not be tolerated.

Of course, what the appropriate sanction for the particular misconduct is, in the public interest, generally depends upon the facts and circumstances of the case. In that regard, in every case, we consider the nature of the ethical duties violated in light of any aggravating or mitigating circumstances. The attorney's prior grievance history, as well as facts in mitigation, constitutes part of those facts and circumstances. We also look to our past cases involving attorney discipline when imposing sanctions.

423 Md. 268, 283–85, 31 A.3d 512, 521–22 (2011) (internal citations omitted). With regards to mitigation, we take into account typically the following circumstances, as urged by the American Bar Association:

> "Absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses."

*Paul*, 423 Md. at 285–86, 31 A.3d at 523 (quoting *ABA Standards for Imposing Lawyer Sanctions* § 9.32 (1992)).

■ Our review of the hearing judge's conclusions of law confirms that Respondent violated the following MLRPC: 1.1, 1.2(a), 1.3, 1.4(a) and (b), 1.16(d), 3.2, 8.1(b), and 8.4(c) and (d). Judge Cavanaugh offered no findings as to whether he found any mitigating circumstances by a preponderance of any evidence. Neither party excepted to the hearing judge's omission in that regard; therefore, we shall determine an appropriate sanction. *Atty. Griev. Comm'n v. Palmer*, 417 Md. 185, 205–06, 9 A.3d 37, 49 (2010) ("Neither Petitioner nor Respondent took written exceptions to [the hearing judge's] findings of fact, recommended conclusions of law, or mitigation findings. Therefore, we 'treat the findings . . . as established for the purpose of determining appropriate sanctions.'" (quoting Md. Rule 16–759(b))).[23]

---

**23.** As noted earlier, Brown advanced evidence in mitigation against Petitioner's charges. He stated that, at the time of the misconduct in the Wallace/ABS matter, he had been dealing with the "deaths of people close" to him. He also produced Judge Robert Dugan of the Circuit Court for Baltimore County, who testified that Respondent was "a person of good character and a trustworthy lawyer." Even if we were to consider these mitigating factors, they are unpersuasive.

The annals of our attorney disciplinary jurisprudence are replete with tales of attorneys who, due to their dilatory or neglectful representation, harmed their clients and were disbarred. In *Bleecker,* we disbarred an attorney who misrepresented the status and the time-bar of his client's case, failed to file timely a complaint, and ignored Bar Counsel's requests for information. 414 Md. at 168–75, 994 A.2d at 940–45. In *Kwarteng,* we disbarred an attorney who failed to answer discovery requests, resulting in sanctions against his client; did not communicate with his client about the status of the case; failed to turn over the client's case file upon request; and, did not respond to Bar Counsel's investigative requests. 411 Md. at 658, 984 A.2d at 868–69. In *McCulloch,* we disbarred a plaintiff's attorney who neglected to serve the defendant, ignored a motion to dismiss filed against the client's claim, did not advise the client on the status of her case, failed to turn over the client's case file upon request, and violated MLRPC 8.4(c) (albeit for fraud, not misrepresentation). 404 Md. at 397–401, 946 A.2d at 1014–17.

Other than the conditional diversion agreements related *supra,* Respondent has not been reprimanded or sanctioned previously. Nevertheless,

---

Regarding the asserted extenuating personal circumstances surrounding the Wallace/ABS matter, Rule 16–757(b) provides in relevant part, "A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence." Respondent did not provide corroborating evidence of the circumstances.

Regarding Judge Dugan's testimony, we have observed previously that character testimony is only minimally mitigating when offered to offset serious attorney transgressions. *See Atty. Griev. Comm'n v. Mininsohn,* 380 Md. 536, 576, 846 A.2d 353, 377 (2004) (disbarring attorney who misappropriated funds despite character testimony in mitigation, which the Court considered "less persuasive" due to the severe nature of the attorney's misconduct); *Atty. Griev. Comm'n v. Bereano,* 357 Md. 321, 342–43, 744 A.2d 35, 46–47 (2000) (disbarring attorney who committed mail fraud and disregarding character evidence under the circumstances of that case). Respondent's misconduct is severe and chronic. Therefore, even if we were to consider Judge Dugan's testimony in a light most favorable to Respondent, it would offset only minimally Respondent's repeated ethical lapses and, in this case, would not change the sanction we shall impose.

the volume and severity of the complaints against respondent lead us to conclude that the appropriate sanction against respondent is disbarment. Respondent has engaged in a pattern of conduct that only the most severe sanction of disbarment will provide the protection to the public that this procedure is supposed to provide. Respondent's lack of diligence, his lack of preparation, his failure to communicate with his clients, ... his misrepresentations, and his failure to comply with Bar Counsel's requests all lead to the most severe sanction of disbarment.

*Atty. Griev. Comm'n v. Wallace,* 368 Md. 277, 293, 793 A.2d 535, 545 (2002) (disbarring attorney who faced six separate client complaints and was found to have violated similar MLRPC as Respondent did in the present case). Given the gravity and pervasiveness of Respondent's misconduct, we must disbar Respondent to protect the public and the integrity of the legal profession in this State.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO *MARYLAND RULE 16–761(b),* FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST BARRY S. BROWN.**